

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-15-2004

# Xue v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1042

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Xue v. Atty Gen USA" (2004). *2004 Decisions*. Paper 937.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/937

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———————

No. 03-1042

———————

RONG JAMES XUE,
                                        Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL
OF THE UNITED STATES OF AMERICA;
IMMIGRATION & NATURALIZATION SERVICE,
                                        Respondents

———————

On Petition for Review of the Order
of the Board of Immigration Appeals
(No. A76-087-615)

———————

Submitted Under Third Circuit LAR 34.1(a)
March 8, 2004

Before:  SLOVITER, NYGAARD, Circuit Judges and OBERDORFER, District Judge*

(Filed: March 15, 2004)

———————

OPINION OF THE COURT

————————————

\*     Hon. Louis F. Oberdorfer, Senior District Judge, United States District
Court for the District of Columbia, sitting by designation.

SLOVITER, Circuit Judge.

Rong James Xue petitions for review of the decision of the Board of Immigration Appeals ("BIA") affirming, without a separate opinion, the decision of an immigration judge ("IJ") denying Xue asylum and withholding of removal. The IJ found that Xue failed to file his asylum application within one year of his arrival in the United States, as required by the Immigration and Naturalization Act ("INA").[1] The IJ also concluded that Xue did not demonstrate a "clear probability" of persecution as required for withholding of removal. For reasons that follow, we will deny Xue's petition.

**I.**

Because we write solely for the parties, we will limit our discussion of the background to only the facts relevant to the issues presented. Xue entered the United States on April 1, 1995 with a nonimmigrant student visa. He lost his student status, having been unable to attend the designated graduate program due to bronchial asthma, but remained in the United States. On September 10, 1998, Xue filed an application for asylum and withholding of removal.

Xue based his asylum and withholding of removal application on religious persecution grounds. He stated in the application that he became a preaching Christian after the students' movement and subsequent massacre in Tiananmen Square on June 4, 1989. While the local authorities did not pay attention to the religious gatherings at his

_____

[1] The one-year bar is not at issue in this case because it applies only to applications for asylum, whereas the issue here is withholding of removal. See 8 U.S.C. § 1158(a).

2

house when he was in China, they searched his house, questioned his parents, and confiscated his furniture and Christian books four months after his departure to the United States. They also told his parents that he would have been arrested had he remained in China. Thereafter, the local authorities searched Xue's house every year around the anniversary of the Tiananmen Square massacre.

The INS filed a Notice to Appear on November 6, 1998, charging Xue with being subject to removal under 8 U.S.C. § 1227(a)(1)(B), and referred his application to the immigration court. At his hearing before the IJ, Xue testified that beginning on May 4, 1989, he and close to 8,000 of his fellow students at Xiamen University participated in student protests against the communist government. Although the authorities arrested some of his fellow protestors during the ensuing crackdown, they did not punish Xue and allowed him to graduate on schedule that summer. Xue then found employment as a quality inspector in a Nike shoe factory. He was baptized on March 15, 1990, organized weekly prayer meetings at his home and the home of his friends, and tried to proselytize some of his factory colleagues. These religious activities continued uninterrupted until Xue's departure to the United States. Xue testified that he remains a practicing Christian, having joined a Jehovah's Witness congregation in Pennsylvania.

The IJ, in an oral decision, denied Xue asylum and withholding of removal, but granted voluntary departure. The IJ found Xue's testimony to be "true and credible for the purposes of the adjudication." A.R. 188. He concluded, however, that Xue is ineligible for asylum because he had failed to file his application within one year of his

3

arrival in the United States, as required under 8 U.S.C. § 1158(a)(2). He also found Xue to be ineligible for withholding of removal because Xue had not demonstrated "a clear probability of persecution as persecution is understood by case law." A.R. 189. Having found Xue to be of "good moral character," the IJ granted Xue voluntary departure. A.R. 189. The BIA summarily affirmed the IJ's decision on December 9, 2002, and rejected additional evidence from Xue in support of his persecution claim. This appeal followed.

## II.

The BIA had jurisdiction to review the IJ's decision under 8 C.F.R. § 1003.1(b). We have jurisdiction to review a final order of removal pursuant to 8 U.S.C. § 1252(a)(1). When the BIA affirms the IJ's decision without opinion, the opinion of the IJ constitutes the final agency determination, see 8 C.F.R. § 1003.1(a)(7)(iii), and the IJ's decision becomes the proper subject of judicial review. Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002).

## III.

Xue concedes that based on our decision in Tarrawally v. Ashcroft, 338 F.3d 180 (3d Cir. 2003), we have no jurisdiction to review the IJ's denial of Xue's asylum claim.[2] Petitioner's Reply Br. at 12. We are also bound by our recent decision in Dia v. Ashcroft, 353 F.3d 228 (3d Cir. 2003) (en banc), in which we upheld the constitutionality of the

---

[2] We concluded in Tarrawally that "the language of 8 U.S.C. § 1158(a)(3) clearly deprives us of jurisdiction to review an IJ's determination that an asylum petition was not filed within the one year limitations period, and that such period was not tolled by extraordinary circumstances." 338 F.3d at 185.

BIA's summary affirmance procedure. Xue argues that it was error to apply that procedure in this case. Assuming, without deciding, that we have jurisdiction to review the BIA's decision to apply the summary affirmance procedure, we reject Xue's argument. The regulatory criteria for application of the summary affirmance procedure have been met. The Board member concurred with the result of the IJ's decision, the case is controlled by existing precedent and did not involve the application of such precedent to a novel factual situation, and the appeal did not present any of the circumstances specified in the regulation for assignment to a three-member panel. 8 C.F.R. § 1003.1(e)(4)-(6).

The only remaining issue on appeal, therefore, is whether the IJ and the BIA erred in denying Xue's application for withholding of removal based on a lack of "a clear probability of persecution." A.R. 189. We review the IJ's determination of Xue's withholding of removal claim under the substantial evidence standard. Gao, 299 F.3d at 272. 8 U.S.C. § 1231(b)(3)(A) states:

> . . . [T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.

Id. To qualify for this mandatory relief, an applicant "must show a clear probability that his life or freedom would be threatened" because of one of the enumerated grounds. Lin v. INS, 238 F.3d 239, 244 (3d Cir. 2001) (internal quotation and citation omitted). This standard requires the applicant to establish that it is more likely than not that s/he would

5

be subject to persecution upon removal to a designated third country. INS v. Cardoza-Fonseca, 480 U.S. 421, 430 (1987); see Janusiak v. INS, 947 F.2d 46, 47 (3d Cir. 1991).

Given our deferential standard of review and the applicable burden of proof, we are not compelled to conclude that the BIA and the IJ erroneously denied Xue's application for withholding of removal. See 8 U.S.C. § 1252(b)(4)(B). The record indicates that during his time in China, Xue encountered no problems from the local authorities either for his religious belief or participation in the student protests. Nor has Xue successfully demonstrated that he is more likely than not to experience persecution if he returns to China. Although Xue produced letters from his parents recounting harassments by local authorities and urging him not to return to China for fear of being persecuted, the letters do not indicate that the authorities' conduct was based on religious grounds. In fact, Xue stated in his testimony in front of the IJ that the local authorities never broke up the weekly prayer meetings in his home, even after he had left for the United States.

As for Xue's involvement in the student protests, the record does indicate that the local authorities search Xue's residence, confiscate his belongings, and question his relatives on every anniversary of the Tiananmen Square massacre. However, unlike the petitioner in Lin, on which petitioner relies substantially for support, Xue has not established that his life or freedom, more likely than not, would be threatened if he returns to China because of his participation in the protests. Lin was subpoenaed by the local police to appear in front of the Chinese Public Security Bureau six days after the

6

Tiananmen Square massacre.  After Lin went into hiding to avoid the interrogation, the police appeared at his home five more times within the span of a year and a half.  Lin, 238 F.3d at 242.  In contrast, Xue encountered no official inquiry or harassment in the six years after the student protests, was allowed to graduate, and kept a job in the local factory.  The local authorities began their annual search and harassment activities only after Xue had left for the United States.  Given that the Chinese authorities had left Xue largely alone for six years while he was in China, these searches, while oppressive and distasteful, do not by themselves establish a "clear probability" of future persecution.

Even if we view Xue's religious and political conduct in the aggregate as the basis for his withholding for application, as Xue argues, the record evidence does not compel us to conclude that Xue has established his burden of proof for obtaining withholding of removal under 8 U.S.C. § 1231(b).  We will therefore deny Xue's Petition for Review.

_____